UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| U.S. Bank Trust National Association, as Trustee of the BKPL-EG Series N Trust<br>Plaintiff,<br><br>v.<br><br>Tad J. Franks<br>Dawn M. Franks<br>Kent County Memorial Hospital<br>Defendants, | Civil Action No. |
|---|---|

**VERIFIED COMPLAINT**

Jurisdiction and Venue

1. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) since there is complete diversity between Plaintiff and all Defendants and the amount in controversy exceeds $75,000.00.

2. Venue is proper under 28 U.S.C. § 1391(b)(2) since the real property that is subject to this complaint is located in the State of Rhode Island.

3. Plaintiff seeks to foreclose a mortgage to Plaintiff pursuant to R.I.G.L. § 34-27-1, et seq.

**Parties**

4. Plaintiff U.S. Bank Trust National Association, as Trustee of the BKPL-EG Series N Trust has a usual place of business at 7114 E. Stetson Drive, Scottsdale, Arizona 85251 (the "**Plaintiff**").

5. Defendants Tad J. Franks and Dawn M. Franks (the "**Defendants**") are individuals who, upon information and belief, reside at 2907 West Shore Road, Warwick, RI (the "**Property**").

6. The Property is further described by the Warwick Tax Assessors as Lot 382, Plat 347.

**Facts**

7. Henry O. Cousineau and Helen Cousineau executed and delivered a warranty deed for the Property to Edward T. Streker, II and Kirsten A. Streker, which deed is dated December 9, 1988 and was recorded on December 18, 1988 in Land Evidence Records for the City of Warwick at book 1224 page 225. See **Exhibit A.**

8. Edward T. Streker, II and Kirsten A. Streker executed and delivered a warranty deed for the Property to Defendants Dawn M. Franks and Tad J. Franks, which deed is dated June 7, 2002 and was recorded on June 10, 2002 in Land Evidence Records for the City of Warwick at book 4058 page 268. *See* **Exhibit B.**

9. There is an unbroken chain of title of not less than 40 years, which creates marketable record title in Defendant pursuant to R.I.G.L. § 34-13.1-2.

10. Defendants Dawn M. Franks and Tad J. Franks executed and delivered a note dated January 31, 2008, to Flagstar Bank, FSB in the original principal amount of $178,640.00 (the "**Note**"). See **Exhibit C.**

11. The note is indorsed in blank.

12. U.S. Bank Trust National Association, as Trustee of the BKPL-EG Series N Trust is the current holder of the Note.

13. SN Servicing Corporation is the servicer of the loan.

14. As security for the Note, Defendants Dawn M. Franks and Tad J. Franks executed, granted and delivered a mortgage in the amount of $178,640.00 containing a power of sale to Mortgage Electronic Registration Systems, Inc., as nominee for Flagstar Bank, FSB, dated January 31, 2008, and recorded in the Land Evidence Records for the City of Warwick on March 4, 2008, at Book 6803 at Page 37 (the "**Mortgage**"). See **Exhibit D.**

15. The Mortgage was assigned from Mortgage Electronic Registration Systems, Inc., as nominee for Flagstar Bank, FSB to Bayview Loan Servicing, LLC. See **Exhibit E.**

16. The Mortgage was further assigned from Bayview Loan Servicing, LLC to Bayview Dispositions IVB, LLC. See **Exhibit F.**

17. The Mortgage was further assigned from Bayview Dispositions IVB, LLC to U.S. Bank Trust National Association, as Trustee of the Igloo Series III Trust. See **Exhibit G.**

18. The Mortgage was further assigned from U.S. Bank Trust National Association, as Trustee of the Igloo Series III Trust to Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-C. See **Exhibit H.**

19. The Mortgage was finally assigned from Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-C to U.S.

Bank Trust National Association, as Trustee of the BKPL-EG Series N Trust. See **Exhibit I.**

20. The Mortgage is secured by the Property located in the City of Warwick, more particularly described as follows:

> That certain lot or parcel of land with all the buildings and improvements hereon, situated on the Northwesterly, or Northerly side of West Shore Road, in the City of Warwick, County of Kent, State of Rhode Island, laid out and designated as Lot 4 (four) on that plat entitled, "SHARON PLAT WARWICK, EL BELONGING TO JOHN MANSOLILLO ET. AL. BY WATERMAN ENGINEERING CO. OCT., 1941", which plat is recorded in the office of the City Clerk of said City of Warwick in Plat Book 10 at page 13 and on Plat Card 403.
>
> Subject to Restrictions on the Recorded Plat.
>
> Subject to a Utility Easement in Book 168 page 60.
>
> **FOR INFORMATIONAL PURPOSES ONLY**
> THE improvements thereon being known as 2907 West Shore Road, Warwick, Rhode Island 02886.
> (Tax ID No. 347038200000)
>
> BEING the same property which, by Warranty Deed dated June 7, 2002, and recorded on June 10, 2002 among the Land Records of the County of Kent, State of Rhode Island, in Liber No. 4058, folio 268, was granted and conveyed by Edward T. Streker, II and Kirsten A. Streker unto Tad J. Frank and Dawn M. Franks, as tenants by the entirety.

21. Plaintiff, U.S. Bank Trust National Association, as Trustee of the BKPL-EG Series N Trust is the present holder of the Note and Mortgage.

22. Defendant Kent County Memorial Hospital may claim an interest, which interest is junior and inferior to that of the Plaintiff, by way of a judgment lien in the amount of $1,357.62 dated November 13, 2017 and recorded November 13, 2017 in Book 8941 at Page 219 of the Warwick Land Evidence Records.

**COUNT I**

23. Plaintiff realleges and reaffirms the allegations set forth in paragraphs 1-22 as if restated herein.

24. Defendants are in default in the performance of the terms and conditions of the Note by reason of failure to timely tender principal and interest payments as required by the terms of the Note.

25. As of January 14, 2023, the sum of $4,373.27 was necessary to cure the default.

26. As a result of the default, Plaintiff is entitled to foreclose the sums due and owing in connection with the Note.

27. As of March 17, 2023, the sum of $184,919.34 was due and owing to Plaintiff from Defendant in connection with the Note.

28. Defendant has no defenses or right of set off with respect to the amounts due in connection with the Note, with the exception of any deficiency balance due and owning in connection with the Note which may have been discharged in bankruptcy.

29. On or about December 15, 2022, Plaintiff, via its authorized servicer of the Mortgage, sent a notice of default and demand to the notice and default provisions of the Mortgage.

30. On or about March 17, 2023, Plaintiff or its predecessor in interest, or authorized servicer of the Mortgage, or anyone holding under the Mortgage, by its attorneys, sent a notice of acceleration of the debt pursuant to the notice and default provisions of the Mortgage.

COUNT II

31. Plaintiff realleges and reaffirms the allegations set forth in paragraphs 1-30 as if restated herein.

32. Defendants, Tad J. Franks and Dawn M. Franks, are the present owners of the Property, and as such are the owners of the equity of redemption of the Property.

33. Defendants are in default in the performance of the terms and conditions of the Mortgage, namely, default in the payment of principal and interest of the Note secured by the Mortgage.

34. Plaintiff is entitled to foreclose the Mortgage, in full or partial satisfaction of the Defendant's obligations in connection with the Note and Mortgage pursuant to their terms and applicable law.

35. Plaintiff is entitled to foreclose the Mortgage by entry and possession and by exercise of the power of sale contained therein, in accordance with R.I.G.L. § 34-27-1, et seq.

36. Upon information and belief and upon examination of the public records, there are no other parties with an equitable interest in the Property.

37. Upon information and belief and upon examination of the public records, there are no other parties with a mortgage, lien or encumbrance with respect to the Property.

38. Upon information and belief, there are no persons having any interest of ownership who are in the Military Service of the United States of America or otherwise entitled to the relief and benefits provided by the Act of Congress known as the Soldiers' and Sailors' Civil Relief Act of 1940, as amended. See **Exhibit J**.

WHEREFORE, Plaintiff prays that the following relief enter:

1. That an order of notice issue on this Complaint, if the Court deems appropriate;

2. Declare that the Mortgage recorded in the Land Evidence Records for the City of Warwick is a valid lien on the Property;

3. Declare that Defendants, Tad J. Franks and Dawn M. Franks are in default of the terms and conditions of the Note and Mortgage;

4. Enter an interlocutory decree authorizing the Plaintiff to foreclose the Mortgage recorded in the Land Evidence Records for the City of Warwick on March 14, 2008 in book 6803 at page 37;

5. Enter judgment in favor of Plaintiff for the sums due and owing from Defendant in connection with the Note and Mortgage with the exception of any deficiency balance due and owning in connection with the Note which may have been discharged in bankruptcy;

6. Enter an Order authorizing Plaintiff to satisfy its Judgment from the foreclosure pursuant to the terms of the Mortgage;

7. The Court approve the acts of the Plaintiff done and performed under the authority of any interlocutory decree authorizing a foreclosure sale and enter a final decree confirming the foreclosure sale; and

8. Such other and further relief as this Honorable Court deems meet and just.

Respectfully submitted,

U.S. Bank Trust National Association, as
Trustee of the BKPL-EG Series N Trust
By its attorney

David A. Shaw, Esq. (RI Bar No. 3497)
Demerle Hoeger LLP
10 City Square, 4th Floor
Boston, MA 02129
(617) 337-4444
(617) 337-4496 (fax)
DSHAW@DHNewEngland.com

DATE: April 26, 2023

*Verification Page to Follow*

**VERIFICATION**

I reviewed the allegations set forth in the foregoing complaint and verify and affirm that the allegations are true based on my review of the records maintained in the ordinary course of business and review of the public records maintained by the City of Cranston. For those allegations set forth as information and belief, I believe them to be true based on the information I reviewed.

By: [signature]

Name: Elena Torres

Title: Asset Manager

SN Servicing Corporation

Date: 4/19/2023

# EXHIBIT A

23522 BOOK 1324 PAGE 225

HENRY O. COUSINEAU and HELEN COUSINEAU

of City of Warwick, County of Kent, State of Rhode Island

for consideration paid, grant to EDWARD T. [illegible], II and KIRSTEN A. [illegible] as tenants by the entirety and not as joint tenants nor as tenants in common.

of Warwick, Rhode Island with WARRANTY COVENANTS

(Description and encumbrances, if any)

That certain lot of land with all the buildings and improvements thereon, situated on the northwesterly, or northerly, side of West Shore Road, in the City of Warwick, County of Kent, State of Rhode Island, laid out and designated as Lot 4 (four) on that plat entitled, "Sharon Plat Warwick, R.I. belonging to John Mancolillo et. al. By Waterman Engineering Co. Nov., 1941", which plat is recorded in the office of the City Clerk of said City of Warwick in Plat Book 10 at page 13 and on Plat Card 403.

Said premises are conveyed subject to restrictions and easements of record.

Said premises are subject to any present or future sewer assessments of record.

198.00 12-12-1988

Received DEC 12 1988 [illegible] Warwick City Clerk

Witness our hands this 9th day of December 1988

*Henry O. Cousineau*

HENRY O. COUSINEAU

Helen Cousineau by her attorney-in-fact *James G. Cousineau*

HELEN COUSINEAU

State of Rhode Island, etc.,
COUNTY OF Kent

In Warwick on the 9th day of December 1988 before me personally appeared HENRY O. COUSINEAU and [struck out] (as attorney-in-fact for Helen Cousineau) JAMES G. COUSINEAU

to me known and known by me to be the parties executing the foregoing instrument, and they acknowledged said instrument, by them executed, to be their free act and deed. and the free act and deed of Helen Cousineau, and the free act and deed of James G. Cousineau in his capacity as attorney-in-fact for Helen Cousineau

*[signature]*
Notary Public

3907 West Shore Road
Warwick, Rhode Island 02886
(Print or type name and address of grantee)

# EXHIBIT B

15777 Bk: 4058 Pg: 248

WARRANTY DEED

EDWARD T. STREKER, II and KIRSTEN A. STREKER, both of the Town of Coventry, County of Kent and State of Rhode Island, for consideration paid, grant to TAD J. FRANKS and DAWN M. FRANKS, both of the City of Warwick, County of Kent and State of Rhode Island as Tenants by the Entirety and not as Joint Tenants and not as Tenants in Common with WARRANTY COVENANTS:

SEE ATTACHED EXHIBIT A

The undersigned hereby certify that the Grantor has complied with the requirement of the 23-28.35-1 and all other provisions of the smoke detector law and carbon monoxide system law.

This transfer is such that no RIGL 44-30-71.3 withholding is required as sellers are residents of Rhode Island.

WITNESS my hand this 7th day of June, 2002.

EDWARD T. STREKER, II

STATE OF RHODE ISLAND
COUNTY OF KENT

In Warwick on the 7th day of June, 2002 before me personally appeared EDWARD T. STREKER, II to me known and known by me to be the party executing the foregoing instrument, and he acknowledged said instrument, by him executed, to be his free act and deed.

Notary Public
Michael J. McCaffrey

WITNESS my hand this 7th day of June, 2002.

KIRSTEN A. STREKER

STATE OF RHODE ISLAND
COUNTY OF KENT

In Warwick on the 7th day of June, 2002 before me personally appeared KIRSTEN A. STREKER to me known and known by me to be the party executing the foregoing instrument, and she acknowledged said instrument, by her executed, to be her free act and deed.

Notary Public
Michael J. McCaffrey

ADDRESS OF GRANTEE:

2907 West Shore Road
Warwick, RI 02886

TAX 366.20
DATE 6-10-02
RECORDER
CITY OF WARWICK
027353
RHODE ISLAND
REAL ESTATE CONVEYANCE

15779 Bk: 4058 Pg: 249

"EXHIBIT "A"

That certain lot or parcel of land with all the buildings and improvements thereon, situated on the northwesterly, or northerly side of West Shore Road, in the City of Warwick, County of Kent, State of Rhode Island, laid out and designated as Lot 4 (four) on that plat entitled, "SHARON PLAT WARWICK, R.I. BELONGING TO JOHN MANSOLILLO ET. AL. BY WATERMAN ENGINEERING CO. OCT., 1941", which plat is recorded in the office of the City Clerk of said City of Warwick in Plat book 10 at page 13 and on Plat Card 403.

Subject to Restrictions on the Recorded Plat.

Subject to a Utility Easement in Book 168 page 60.

Property Address:

2907 West Shore Road
Warwick, RI 02886

AP 347 Lot 382

Recorded
06/10/2002 08:34:01AM
Marie T. Bennett, City Clerk
City of Warwick, RI
Rec Fee: 26.00
Hist Fee: 1.00 Lmc Fee: 1.00

EXHIBIT C

V3 WBCD LOAN # [redacted]

# NOTE

Multistate

JANUARY 31, 2008 [Date] — OWING MILLS, [City] — MARYLAND [State]

2907 W SHORE RD, WARWICK, RI 02886-5446
[Property Address]

**1. PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means FLAGSTAR BANK, FSB, A FEDERALLY CHARTERED SAVINGS BANK

and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of ********ONE HUNDRED SEVENTY EIGHT THOUSAND SIX HUNDRED FORTY AND NO/100********************** Dollars (U.S. $178,640.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of SIX AND SEVEN-EIGHTHS percent ( 6.875% ) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the 1ST day of each month beginning on APRIL 1, 2008. *Any principal and interest remaining on the* 1ST *day of* MARCH, 2038 will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at
5151 CORPORATE DR
TROY, MI 48098-2639

or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $1,173.54. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box] ☐ Graduated Payment Allonge ☐ Growing Equity Allonge ☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of 15 calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent ( 4.000% ) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment

Initials:

2907 W Shore Rd Warwick, RI 02886-5446

V3 WBCD LOAN # [redacted]

defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

[signature] (Seal)
TAD FRANKS

[signature] (Seal)
DAWN FRANKS

PAY TO THE ORDER OF Bayview Loan Servicing, LLC
WITHOUT RECOURSE
FLAGSTAR BANK, FSB

BY: [signature]
JEAN R. GARBOCK, SENIOR VICE PRESIDENT

BY: [signature]
JOHN P. [illegible], FIRST VICE PRESIDENT

[redacted]

2907 N Shore Rd Narrows RI 02888-5445

# Note Allonge

Statement of Purpose: This Note Allonge is attached to and made a part of the Note, for the purpose of Noteholder Endorsement to evidence a transfer of interest.

8182258

Loan Number:
Servicer Loan Number: 1

Loan Date: **1/31/2008**
Original Loan Amount: **$178,640.00**

Lender: **FLAGSTAR BANK, FSB, A FEDERALLY CHARTERED SAVINGS BANK**

Borrower: **TAD FRANKS & DAWN FRANKS**
Property Address: **2907 W SHORE RD, WARWICK, RI 02886-5446**

Pay to the order of

**BAYVIEW DISPOSITIONS IVB, LLC**

Without recourse

**BAYVIEW LOAN SERVICING, LLC**

By: ______________________

Printed Name: **ESLOAN SOTOLONGO**

Title: **ASSISTANT VICE PRESIDENT**

BV# 

ALLONGE TO NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE REFERRED TO BE

BORROWER: TAD J FRANKS
CO-BORROWER: Dawn M Franks
CO-BORROWER:

OBAL: $178,640.00
NOTE DATE 01/31/2008
ADDRESS: 2907 W SHORE RD WARWICK, RI 02886

PAY TO THE ORDER OF:

WITHOUT RECOURSE:

Bayview Dispositions IVb, LLC

BY: ______________________

NAME: JOMARA RODRIGUEZ

TITLE: Assistant Vice President

EXHIBIT D

INST# 00004345 BK# 6803 Pg# 37

~~After Recording Return To:~~
FLAGSTAR BANK
5151 CORPORATE DRIVE
TROY, MI 48098
FINAL DOCUMENTS, MAIL STOP W-530-3

C08-0911

RETURN TO:
COBALT SETTLEMENT SERVICES, L.L.C.
11500 Cronridge Drive
Suite 100 D
Owings Mills, Maryland 21117
Phone 443-738-0400

[Space Above This Line For Recording Data]

State of Rhode Island

# MORTGAGE

| FHA Case No. |
|---|
| 451-0920526-703 |

MIN 100052550188809273

THIS MORTGAGE ("Security Instrument") is given on JANUARY 31, 2008. The Mortgagor is TAD J. FRANKS AND DANE M. FRANKS,

whose address is
2907 W SHORE RD
WARWICK, RI 02886-5446

("Borrower").

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS. FLAGSTAR BANK, FSB, A FEDERALLY CHARTERED SAVINGS BANK

("Lender") is organized and existing under the laws of UNITED STATES OF AMERICA, and has an address of 5151 CORPORATE DR, TROY, MI 48098-2639.

Borrower owes Lender the principal sum of **ONE HUNDRED SEVENTY EIGHT THOUSAND SIX HUNDRED FORTY AND NO/100****************************************************** Dollars (U.S. $178,640.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on MARCH 1, 2038. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in KENT County, Rhode Island:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF
APN #: 34703820000

CERTIFIED TRUE COPY
Of Original Filed In This Office
Date: 3/14/2008 Time: 11:03 AM
Book: 6803 Page: 37
Document Type: MORTGAGE
Attest:
Warwick City Clerk
City of Warwick, RI

INST: 00004345 Bk: 6803 Pg: 38

which has the address of 2907 W SHORE RD, WARWICK, V3 MBCD LOAN#: [redacted]
[Street, City],
Rhode Island 02886-5446 ("Property Address");
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to

occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. *Condemnation. The proceeds of any award or claim for damages, direct or consequential,* in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

*If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other* covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) *agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b)* contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) *No Waiver. If circumstances occur that would permit Lender to require immediate payment in full,* but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining *to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.* Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.

However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

Initials: [signature]
REFHADE 0000
01-31-2008 10:51

© 2006 Online Documents, Inc.

V3 WBCD LOAN # [redacted]

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of notice of sale to Borrower as provided in paragraph 13. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

© 2006 Online Documents, Inc.

Initials: [signature] [signature]

REFIADE 0005

01-31-2008 10:51

INST: 00004345 Bk: 6803 Pg: 41

V3 WBCD LOAN # [redacted]

20. **Homestead Estate.** If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider ☐ Growing Equity Rider ☐ Planned Unit Development Rider
☐ Graduated Payment Rider ☐ Other(s) [specify]

Borrower has paid the following brokerage fees, loan fees, points, finder's fees, origination fees or similar charges in connection with the loans secured by this Security Instrument:

| | |
|---|---|
| Origination - Discount Fees (points) | $929.98 |
| Application Fees | |
| Closing Preparation Fees | $150.00 |
| Other Fees | $10,042.40 |

*As provided in R.I.G.L. Sections 34-23-6, none of these fees will be refunded in the event the loan is prepaid in whole or in part.*

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

Tad Franks (Seal)
TAD FRANKS

Dawn Franks (Seal)
DAWN FRANKS

State of RHODE ISLAND
County of: ~~BALTIMORE~~ KENT

In WARWICK (city) in said County on the 31 day of JANUARY 2008 before me personally appeared TAD FRANKS AND DAWN FRANKS

each and all to me known, and known by me to be the party(ies) executing the foregoing instrument, and THEY acknowledged said instrument, by him/her/them executed to be THEIR free act and deed.

[signature] NOTARY PUBLIC
Signature of Notary, Title

FREDERICK A. KANAKRY
Notary Public
State of Rhode Island
My Commission Expires Apr 1, 2010

INST: 00004345 Bk: 6803 Pg: 42

# Exhibit A

That certain lot or parcel of land with all the buildings and improvements hereon, situated on the Northwesterly, or Northerly side of West Shore Road, in the City of Warwick, County of Kent, State of Rhode Island, laid out and designated as Lot 4 (four) on that plat entitled, "SHARON PLAT WARWICK, EL BELONGING TO JOHN MANSOLILLO ET. AL. BY WATERMAN ENGINEERING CO. OCT., 1941", which plat is recorded in the office of the City Clerk of said City of Warwick in Plat Book 10 at page 13 and on Plat Card 403.

Subject to Restrictions on the Recorded Plat.

Subject to a Utility Easement in Book 168 page 60.

**FOR INFORMATIONAL PURPOSES ONLY**
THE improvements thereon being known as 2907 West Shore Road, Warwick, Rhode Island 02886.
(Tax ID No. 34703820000)

BEING the same property which, by Warranty Deed dated June 7, 2002, and recorded on June 10, 2002 among the Land Records of the County of Kent, State of Rhode Island, in Liber No. 4058, folio 268, was granted and conveyed by Edward T. Streker, II and Kirsten A. Streker unto Tad J. Frank and Dawn M. Franks, as tenants by the entirety,

RECORDED
Mar 14,2008 11:03:28A
Marie T. Bennett, City Clerk
City of Warwick, RI

# EXHIBIT E

INST# 00016161 BK# 9169 PG# 96

Recording Requested By: MERIDIAN ASSET SERVICES

When Recorded Mail To:
Meridian Asset Services
Attn: Doc Intake
3201 34th Street South, Suite 310
St. Petersburg, FL 33711

Loan #
TS Ref

## CORPORATE ASSIGNMENT OF MORTGAGE

RI/WARWICK
MERS #: 100082550186808273 / MERS Phone #: (888) 679-6377

Assignment Prepared on: July 12, 2017

Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FLAGSTAR BANK, FSB, ITS SUCCESSORS AND ASSIGNS, at P.O. Box 2026, Flint, MI, 48501-2026

Assignee: BAYVIEW LOAN SERVICING, LLC, at 4425 PONCE DE LEON BLVD, 5TH FLOOR, CORAL GABLES, FL, 33146

For value received, the Assignor does hereby grant, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 1/31/2008, in the amount of $178,640.00, executed by TAD J. FRANKS AND DAWN M. FRANKS to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FLAGSTAR BANK, FSB, A FEDERALLY CHARTERED SAVINGS BANK, ITS SUCCESSORS AND ASSIGNS and Recorded: 3/14/2008, Instrument #: 00004345, Book: 0803, Page: 37 in the District of WARWICK, State of Rhode Island.

Property Address: 2907 W SHORE RD, WARWICK, RI, 02886-5446

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FLAGSTAR BANK, FSB, ITS SUCCESSORS AND ASSIGNS

Effective Date 6/12/2017

On JUL 2 4 2017

Signature:
Name: Robert G. Hall
Title: ASSISTANT SECRETARY

State of FLORIDA
County of MIAMI-DADE

On JUL 2 4 2017 before me, Rogelio A. Portal, a Notary Public in and for MIAMI-DADE in the State of FLORIDA, personally appeared Robert G. Hall, ASSISTANT SECRETARY, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FLAGSTAR BANK, FSB, ITS SUCCESSORS AND ASSIGNS, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal,

Rogelio A. Portal
Notary Expires: 8/25/2020 / #: FF 093630

ROGELIO A. PORTAL
MY COMMISSION # FF 093630
EXPIRES: August 25, 2020
Bonded Thru Notary Public Underwriters

RI/WARWICK

RECORDED
Nov 15,2018 09:57A
[illegible] City Clerk
City of Warwick RI

# EXHIBIT F

INST: 00016162 Bk: 9169 Pg: 97

Recording Requested By: **MERIDIAN ASSET SERVICES**

When Recorded Mail To:

**Meridian Asset Services**
**Attn: Doc Intake**
**3201 34th Street South, Suite 310**
**St. Petersburg, FL 33711**

rec 2nd

## CORPORATE ASSIGNMENT OF MORTGAGE

RIWARWICK

Assignment Prepared on: July 12, 2017

Assignor: BAYVIEW LOAN SERVICING, LLC, at 4425 PONCE DE LEON BLVD. CORAL GABLES, FL, 33146

Assignee: BAYVIEW DISPOSITIONS IVB, LLC, at 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL, 33146

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 1/31/2008, in the amount of $176,640.00, executed by TAD J. FRANKS AND DAWN M. FRANKS to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FLAGSTAR BANK, FSB, A FEDERALLY CHARTERED SAVINGS BANK, ITS SUCCESSORS AND ASSIGNS and Recorded: 3/14/2008, Instrument #: 00004345, Book: 6803, Page: 37 in the District of WARWICK, State of Rhode Island.

Property Address: 2007 W SHORE RD, WARWICK, RI, 02886-5446

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

BAYVIEW LOAN SERVICING, LLC

On: 07-19-2017

Signature: [signature]
Name: ESLOAN SOTOLONGO
Title: ASSISTANT VICE PRESIDENT

State of FLORIDA
County of MIAMI-DADE

On 07-19-2017 before me, Rogelio A. Portal, a Notary Public in and for MIAMI-DADE in the State of FLORIDA, personally appeared ESLOAN SOTOLONGO, ASSISTANT VICE PRESIDENT, BAYVIEW LOAN SERVICING, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Rogelio A. Portal
Notary Expires: 8/26/2020 #: FF 003630

ROGELIO A. PORTAL
MY COMMISSION # FF 003630
EXPIRES: August 26, 2020
Bonded Thru Notary Public Underwriters

RIWARWICK

RECORDED
Nov 15, 2016 10:00A
Lap Pasliter... City Clerk
City of Warwick, RI

EXHIBIT G

INST: 00016163 Bk: 9169 Pg: 78

Recording Requested By: MERIDIAN ASSET SERVICES

When Recorded Mail To:
Meridian Asset Services
Attn: Doc Intake
3201 34th Street South, Suite 310
St. Petersburg, FL 33711

Lo
TS

rec 3rd

**CORPORATE ASSIGNMENT OF MORTGAGE**

RI/WARWICK

Assignment Prepared on: October 04, 2017

Assignor: BAYVIEW DISPOSITIONS IVB, LLC, at 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL, 33146

Assignee: U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE IGLOO SERIES III TRUST at 7114 E STETSON DR, #250, SCOTTSDALE, AZ, 85251

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 1/31/2008, in the amount of $178,640.00, executed by TAD J. FRANKS AND DAWN M. FRANKS to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FLAGSTAR BANK, FSB, A FEDERALLY CHARTERED SAVINGS BANK, ITS SUCCESSORS AND ASSIGNS and Recorded: 3/14/2008, Instrument #: 00004346, Book: 6803, Page: 37 in the District of WARWICK, State of Rhode Island.

Property Address: 2907 W SHORE RD, WARWICK, RI, 02886-5446

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

BAYVIEW DISPOSITIONS IVB, LLC

On: OCT 24 2017

Signature: ________
Name: ESLOAN SOTOLONGO
Title: ASSISTANT VICE PRESIDENT

State of FLORIDA
County of MIAMI-DADE

On OCT 24 2017 before me, Rogelio A. Portal, a Notary Public in and for MIAMI-DADE in the State of FLORIDA, personally appeared ESLOAN SOTOLONGO, ASSISTANT VICE PRESIDENT, BAYVIEW DISPOSITIONS IVB, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal,

________
Rogelio A. Portal
Notary Expires: 8/25/2020 / #: FF 993030

ROGELIO A. PORTAL
MY COMMISSION # FF993030
EXPIRES August 25, 2020
Bonded Thru Notary Public Underwriters

RI/WARWICK

RECORDED
Nov 15, 2018 10:01A
Lyn Pagliarini, City Clerk
City of Warwick, RI

# EXHIBIT H

INST# 00005637 Bk# 9260 Pg# 259

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use

Loan No

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF IGLOO SERIES III TRUST, whose address is 7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251, (ASSIGNOR), does hereby grant, assign and transfer to WILMINGTON SAVINGS FUND SOCIETY, FSB, AS OWNER TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST V-C, whose address is 3020 OLD RANCH PARKWAY SUITE 180, SEAL BEACH, CA 90740, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 1/31/2008
Original Loan Amount: $178,640.00
Executed by (Borrower(s)): TAD J. FRANKS & DAWN M. FRANKS
Original Lender: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FLAGSTAR BANK, FSB, A FEDERALLY CHARTERED SAVINGS BANK, ITS SUCCESSORS AND ASSIGNS
Filed of Record: In Mortgage Book/Liber/Volume 6803, Page 37, Document/Instrument No: 00004345 in the Recording District of CITY OF WARWICK, RI, Recorded on 3/14/2008.

Property more commonly described as: 2907 W SHORE RD, WARWICK, RHODE ISLAND 02886-5446

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: 4/19/2019

US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF IGLOO SERIES III TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT

By: MARK WATERMAN
Title: VICE PRESIDENT

Witness Name: CAITLIN HARDWICK

INST# 00005637 Bk# 9260 Pg# 260

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of **FLORIDA**
County of **PINELLAS**

On **4/19/2019**, before me, **LAUREEN K PRESCOTT**, a Notary Public, personally appeared **MARK WATERMAN, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF IGLOO SERIES III TRUST**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify **MARK WATERMAN**, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **LAUREEN K PRESCOTT**
My commission expires: **01/29/2022**

LAUREEN K PRESCOTT
Commission # GG 180372
Expires January 29, 2022
Bonded Thru Budget Notary Services

RECORDED
May 06,2019 08:56A
Lynn D'Abrosca
Deputy City Clerk
City of Warwick, RI

# EXHIBIT I

INST# 00021366 Bk# 9988 Pg# 70

Prepared By and Return To

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 151-2442

Space above for Recorder's use

Loan [redacted]

# ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, WILMINGTON SAVINGS FUND SOCIETY, FSB, AS OWNER TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST V-C, whose address is 3020 OLD RANCH PARKWAY SUITE 180, SEAL BEACH, CA 90740, (ASSIGNOR), does hereby grant, assign and transfer to U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE DKPL-EG SERIES N TRUST, whose address is 7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 1/31/2008
Original Loan Amount: $178,640.00
Executed by (Borrower(s)): TAD J. FRANKS & DAWN M. FRANKS
Original Lender: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR FLAGSTAR BANK, FSB, A FEDERALLY CHARTERED SAVINGS BANK, ITS SUCCESSORS AND ASSIGNS
Filed of Record: In Mortgage Book/Liber/Volume 6803, Page 37
Document/Instrument No: 00004345 in the Recording District of City of Warwick, RI, Recorded on 3/14/2008.

Property more commonly described as: 2907 W SHORE RD, WARWICK, RHODE ISLAND 02886-5446

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: OCT 0 7 2021

WILMINGTON SAVINGS FUND SOCIETY, FSB, AS OWNER TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST V-C, BY AMERICAN MORTGAGE INVESTMENT PARTNERS MANAGEMENT, LLC, ITS ATTORNEY-IN-FACT

By: DEVAR NOBLE
Title: VP, COLLATERAL MANAGEMENT

Witness Name: A. Fuentes

1013822 Cut AMIP May21 15401661

INST# 00021366 Bk# 9988 Pg# 71

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of **CALIFORNIA**
County of **ORANGE**

On **10/7/2021** before me, **VALYA FISHER**, the undersigned Notary Public, personally appeared **DENA R NOBLE**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of **CALIFORNIA** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**NOTARY PUBLIC**
Printed Name: **VALYA FISHER**
My Commission Expires: **March 29, 2023**

VALYA FISHER
Notary Public - California
Orange County
Commission # 2283516
My Comm. Expires Mar 29, 2023

RECORDED
Oct 25,2021 09:57A
Lynn D'Abrosca
City Clerk
City of Warwick, RI

EXHIBIT J

Department of Defense Manpower Data Center

Results as of : Apr-12-2023 06:41:10 PM

SCRA 5.15

**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN: XXX-XX[redacted]
Birth Date:
Last Name: FRANKS
First Name: TAD
Middle Name:
Status As Of: Apr-12-2023
Certificate ID: 53YNFB4FR0WF00H

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Michael V. Sorrento

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other elig bility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

Department of Defense Manpower Data Center

Results as of : Apr-12-2023 06:41:42 PM

SCRA 5.15

# Status Report
# Pursuant to Servicemembers Civil Relief Act

SSN: XXX-XX-[redacted]
Birth Date:
Last Name: FRANKS
First Name: DAWN
Middle Name:
Status As Of: Apr-12-2023
Certificate ID: DK5P6RG5G5XPCF8

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Michael V. Sorrento

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other elig bility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.